SOLAR CORPORATION, by Merger now Gamble-Skogmo, Inc., Plaintiff-Appellant,

v.

BORG–WARNER CORPORATION, Defendant-Appellee.

No. 11927.

United States Court of Appeals Seventh Circuit.

May 24, 1957.

As Corrected on Denial of Rehearing July 9, 1957.

Andrew E. Carlsen, Minneapolis, Minn., Edward C. Grelle, Chicago, Ill., Douglas L. Carlsen, Minneapolis, Minn., for appellant.

Casper W. Ooms, C. G. Stallings, Chicago, Ill., Herbert J. Schmid, Robert C. Williams, Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, LINDLEY, and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit for infringement of the patents, Castner 2,470,140 claims 1, 4, and 5, reissue thereof 23,626, claims 1, 4, 5, 6, 7 and 8, and Roth, 2,633,727 claims 1 and 3, resulted in a determination that all claims in suit were invalid, but that, if valid, defendant had infringed claim 1 of both Castner patents and claims 1 and 3 of the Roth patent, but not claims 4 and 5 of the original Castner patent, or claims 4, 5, 6, 7 and 8 of the reissue patent. Upon appeal, plaintiff insists that the trial court erroneously held (1) the claims invalid; (2) that, in view of the prior art, Castner's and Roth's claims represent no invention over the prior art; and (3) that defendant had not infringed claims 4 and 5 of the original Castner patent, and claims 4, 5, 6, 7 and 8 of Castner's reissue.

The patents have to do with an automatic washing machine in which an imperforate tub is mounted upon a vertical axis. In operation, clothes are inserted in the tub at the top and are

washed by means of a reciprocal agitator which in effect churns the contents. In operating machines of this type the water therein is extracted and drained by spinning the tub rapidly, thereby producing centrifugal force by which the water is driven over the top of the tub. Two kinds of refuse result from this operation. The finely divided lighter particles of dirt thrown out of the clothes float on the water and collect on its surface as scum and are carried off by the water in rinsing. Heavier matters, such as grit and sand, settle at the bottom of the tub. Thus, the lighter refuse matter rises to the surface as scum and is "spun" or flushed out with the water. The heavier sediment tends to sink to the bottom. So, early in the art, the builders of such machines supplied traps at the bottom of the tub to collect the heavier sediment, from which it could be flushed out through a discharge conduit, when the tub was spun.

All claims involved have to do with patentee's specifically provided form and location of sediment trap and discharge tube. Claim one in each of the Castner patents reads as follows: "In a washing machine having a tub adapted to receive liquid and material to be washed and to be spun to centrifugally extract the liquid from the material, the tub being provided with a recess in its bottom to accumulate and trap sedimentary material during the washing operation and said recess having at least one outlet in its outer wall to discharge such trapped material centrifugally as the tub is spun, and the said recess being so shaped that such outlet will be spaced further from the axis of rotation than other parts of the wall whereby the trapped sedimentary material will work from opposite sides toward said outlet by centrifugal action."

The district court, after consideration of documentary evidence, physical exhibits, demonstrations of equipment in open court, and oral testimony of various witnesses, made findings of fact to the effect that Dunham, 2,274,402 of 1942,

anticipated Castner's claim 1; that the teachings of Dunham, 2,274,402, King, 974,075, Wright, 1,850,821, Smith, 2,637,188, and Dyer, 2,313,928, were such that neither Castner nor Roth achieved patentable invention over them; that it was not invention "to provide a single annular trap in conjunction with the funnelled bottom of Castner, after the Dyer patent had shown the funnelled bottom construction with the annular sediment trap"; that claims 1 and 3 of Roth are not inventive over Smith, No. 2,637,188, and the original Castner patent; that defendant has certain intervening rights; that plaintiff's commercial success was not sufficient to be persuasive of invention upon Castner's part; that claim 1 of the original patent and of the reissue patent is anticipated; that claims 4 and 5 of the original patent, and 4, 5, 6, 7 and 8 of the reissue patent are "invalid for failure to define any invention over the prior art, and that claims 1 and 3 of Roth are invalid for want of invention."

■ It is obvious that where, as here, the trial court has been called upon to pass upon the credibility of oral testimony and to observe and evaluate the results of manipulation of the devices in question before it, as well as documentary evidence, under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., we cannot disturb the findings unless they are clearly erroneous. This is not a case where the district court had before it only documentary evidence, which a court of review is as adequately prepared to interpret as the trial court, but rather one where the questions of credibility and credence were peculiarly within the province of the district court. This we must keep in mind in considering the plaintiff's contentions upon review.

The closest prior art is Dunham, which the court found "shows an automatic washing machine having a tub which is tapered upwardly so that during centrifugal drying the main body of the water is discharged through a series of outlet holes high on the wall of the tub. Dunham shows a plurality of sediment

traps arranged under the perforated bottom of the tub into which sediment in the wash water may settle, the traps being extended into vertical tubes through which, during centrifugal drying, heavy particles which have found their way into the sediment traps will be discharged along with the water therein. It is obvious from the construction shown in Dunham's Fig. 1 that any sedimentary material which finds its way into the sediment trap thereof will be centrifugally discharged through the attached tube during spinning. Testimony of plaintiff's witness Dugger to the contrary gave no reason for his conclusion, and the court accepted the testimony of defendant's witness Colburn that the trap will empty, a fact impliedly conceded by Castner in applying for a reissue patent because of his discovery of the Dunham patent."

In addition the court made a special finding that Dyer "discloses a domestic washing machine with vertical agitator having a dished or funnelled bottom portion terminating in an annular sediment trap. Heavy material which collects in this trap is centrifugally discharged through adjacent passages and out over the sidewall of the outer riser during spinning."

Plaintiff asserts that neither of these patents anticipates, or represents any more than past attempts and failures in the industry to solve the problem which only Castner succeeded in solving. Dunham seems not to have been considered in the patent office upon the application for the original patent, but was before that office on the application for reissue. Claim 1 in each patent is the same. It is concerned, says the plaintiff, with the feature of so forming the sediment receiving recess that the trapped material will be flushed around to the discharge outlet in the outer wall, accomplished by making the outer wall of the annular recess elliptical or cam-shaped, or, in other words, somewhat funnel-shaped, toward the outlet. By this construction, the patentee claimed that the trapped sedimentary material will work from opposite sides toward the outlet by centrifugal action. Plaintiff insists, moreover, that Dunham's disclosure does not structurally or functionally respond to the Castner claim; that Dunham's channel is relatively small and not annular in form, and therefore cannot receive sufficient water to create a flushing action of sufficient velocity to carry away sand or other heavy sediment; that sediment disposal was far from Dunham's mind, and that his intent was merely to form an overflow for liquid during the washing operation.

In reply, defendant insists that, under the oral testimony presented by it, there was no question but that the heavy dirt which fell into the recess in Dunham would be thrown out by centrifugal force. Testimony for the plaintiff was to the contrary. Castner said in his specification: "Inasmuch as the sediment trap 28 is annular in form and extends entirely around the base plate, under and concentric with the agitator skirt, it will be seen that all areas of the dished bottom part 14 of the tub will drain freely and directly into the trap." His claim 1, we think, reads literally upon Dunham's disclosure.

The court saw demonstrated each of these machines as well as others. It had the benefit of the testimony, and concluded that Dunham completely anticipated claim 1. We have examined the evidence. We have not had before us the demonstrations made in the district court, but we are convinced that, under the evidence preserved, the court was justified in finding, upon contradictory evidence, that Dunham anticipated claim 1 of each of Castner's patents and that the prior art was of such character as to negative invention upon the part of Castner and Roth in any of the claims in suit.

We think the evidence adequately supports the finding that, with this prior art before him, Castner's achievement did not rise to the dignity of patentable invention. As we said in Higby v. A. B. T.

Mfg. Co., 93 F.2d 73, 74: " * * * A mere carrying forward or new or more extended, application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such achievement as will sustain a patent." See also our opinion in Monckmeier v. Erie Mfg. Co., 98 F.2d 369. The Patent Act of 1952, 35 U.S.C.A. § 103, provides that a patent may not be obtained " * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains * * *." So here, we conclude that the court was justified in finding that the prior art of which Castner and Roth were bound to take notice taught them all that they, as skilled mechanics, needed to be taught in order to do what they accomplished.

It should be observed that Castner was not the first to devise an annular sediment trap. Dyer, in 2,313,928 had already done that.

■ The court found claims 1 and 3 of Roth, 2,633,727 not inventive over the original Castner patent. Roth asserted improvement in the curving of the discharge pipe used by both, so that the discharge end trails the lower end of the tub. Everything else in Roth was found in Castner. This curve, so far as facility and utility is concerned, is said to depend upon its sloped character, and plaintiff claims that the result is achieved because of the effects of inertia of the water passing through. Some of plaintiff's tubs included this sloped tube. Others did not, and defendant's structure apparently does not include it. We agree with the district court that Roth did nothing more than make an improvement that would occur to any worker skilled in the art. Furthermore, there was evidence to the effect that the so-called improvement was of little or no value and the court in effect so found.

In view of our conclusions, we think this opinion need not be extended by minute discussion of the remaining prior art references, none of which detracts in any way from what we have said. We do not deem it essential to consider other questions presented.

The judgment is affirmed.