**LEWIS E. HAMEL CO., Inc., Plaintiff,**
v.
**P & K, INCORPORATED, Defendant.**
Civ. No. 1639–D.

United States District Court
E. D. Illinois.
May 17, 1960.

Harold E. Stonebraker, Rochester, N. Y., for plaintiff.

Paul C. Miller of Prangley, Baird, Clayton, Miller & Vogel, Chicago, Ill., and Thomas A. Nutting, Momence, Ill., for defendant.

PLATT, Chief Judge.

Plaintiff, Lewis E. Hamel Co., instituted this action against the defendant, P & K, Incorporated, alleging infringement of Patent No. 2,493,344, hereafter referred to as 344, and Design Patent No. 158,958, hereafter referred to as 958. Plaintiff dismissed, with prejudice, the allegations in the complaint alleging unfair competition. Both patents pertain to a plastic fishhook and snell holder and were issued to Lewis E. Hamel, the inventor, and assigned by him to the plaintiff.

In patent 344 the application was filed July 12, 1949, and issued January 3, 1950. The Design Patent No. 958 issued June 13, 1950, upon an application filed July 12, 1949.

The defendant contends:

(1) That both patents are invalid because:

(a) They do not rise to the status of invention in view of the prior art. 35 U. S.C.A. §§ 102(b), 171.[1]

(b) The difference between the plaintiff's mechanical and design patents and the prior art are such that the subject matter as a whole would have been obvious to one having ordinary skill in the art. 35 U.S.C.A. §§ 103, 171.

---

[1]. It was stipulated between the parties that 35 U.S.C.A., 1954 Edition, would be applicable.

(2) That claims 1, 2, 6, and 7 are broader than the invention described in the specifications which include the air chambers as an essential element.

(3) That the accused device does not infringe plaintiff's patents.

Claim one of patent 344 reads as follows: "1. A fishhook and snell holder comprising a housing consisting of two sections of plastic material permanently secured together, each of said sections having a channeled cross-section with slots at one end to receive spring-actuated retainers and a plurality of series of transversely arranged hook-receiving openings at the other end." Claim 2 adds longitudinal grooves in the outer surface of the housing which receive the snell and ridges between these grooves extending somewhat above the snells when the latter are in position. Claim 3 adds a sealed air chamber at the center of the housing formed when the two sections of the plastic material are permanently secured together. Claims 4 and 5 add no new element. Claims 6 and 7 add a spring-actuated retainer component which consists of slots at one end of each of the two main housing sections to receive spring-actuated retainers, these sections having curved grooves in their inner surfaces adjacent to the slots with springs and spring-actuated retainers seated and moveable in the grooves and spring guiding plate arranged between the sections having curved grooves in its opposite surfaces positioning the springs and retainers. Claims 8 and 9 add no new element but combine all the elements described in the prior claims.

The plaintiff maintains that all claims are valid and establish infringement of his fishhook and snell holder:[2] The claims are comprised of the following elements:

(1) A housing made of plastic.

(2) "[A] housing * * * of two sections * * * permanently secured together, each * * *

section having a channeled cross-section."

(3) "[A] plurality of series of transversely arranged hook-receiving openings" at one end.

(4) "[S]lots at the [opposite] end to receive spring-operated retainers."

(5) "Springs and spring-actuated retainers seated and moveable in a cylindrical shaped space formed by grooves in the inner surfaces of the housing sections and grooves in the spring-guiding plate which is positioned between the housing sections."

(6) "[S]aid sections having grooves in their outer surfaces extending endwise thereof to receive the snells, and ridges between said grooves extending somewhat above portions of the snells when the latter are positioned on the holder."

(7) The housing "sections having inwardly extending transverse partitions contacting and permanently attached to each other forming a sealed air chamber at the center of the housing."

■ The Niagra holder and the Wilcox holder were admitted in evidence, without objection, as prior art under section 102(b). The Niagra holder was manufactured under Buicke patent No. 2,190,647, issued February 20, 1940. The patentee, Mr. Hamel, testified that he had knowledge of the Niagra holder at the time he made his first model. The Wilcox holder appears in Wilcox patent No. 2,624,973, which issued January 13, 1953. The Wilcox patent did not issue at least one year prior to Hamel's application filed July 12, 1949, but a Wilcox holder was in public use one year prior thereto. Wilcox was a manufacturer of plastic articles. He and two of his associates constructed the snell holder, which was of plastic material, in February or March, 1948. They completed the final model shortly before May 15,.

---

2. In oral argument plaintiff relied primarily on Claim 1, which does not include elements 5, 6, and 7.

1948. Wilcox and his wife used this holder on several fishing trips in Colorado, where they resided, starting in the middle of May, 1948. Wilcox testified to these facts in his deposition, and he was corroborated on the use of the holder by Mrs. Wilcox in her deposition. The proof of prior use of the Wilcox holder was not contradicted and was sufficiently clear to establish the public use. Whiteman v. Mathews, 9 Cir., 1954, 216 F.2d 712. In its argument plaintiff maintains that the Niagra and Wilcox holders were not an anticipation of Hamel's holder. They were not introduced in the record for that purpose but only as prior art. They were in use one year prior to Hamel's application date and contained some of the elements described in Hamel's patents and must be considered as prior art. Whiteman v. Mathews, supra. See Watson v. Allen, 1958, 103 U.S.App.D.C. 5, 254 F.2d 342; General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 203 F.2d 912, 915.

Plaintiff seeks to distinguish 344 from the prior art by the fact that it is made of plastic housing. The Wilcox holder was also made of plastic. Substituting plastic material for metal or any other material which was used in the prior art does not amount to a patentable invention. Bobertz v. General Motors Corporation, 6 Cir., 1955, 228 F.2d 94; Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 1950, 182 F.2d 1000; Electro Mfg. Co. v. Yellin, 7 Cir., 1943, 132 F.2d 979; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 1941, 118 F.2d 600.

The other elements of 344 were old in the art. Figure 6 of the Gardner fishhook holder, Patent No. 1,451,256, issued April 10, 1923, shows a housing of one piece similar to one section of 344. If two Gardner housings were fastened back to back the result would be a housing of two sections permanently secured together, having a channeled cross-section. The Niagra holder has two sections at either end fastened together by a piece of fiber material and utilizes both sides of the holder. The duplication of an old part does not in itself make a device patentable. In re Abrahamsen, 1931, 53 F.2d 893, 19 CCPA 702. Furthermore, "[a] mere carrying forward of a known principal, or change in form, size, proportions or degree, or doing the same thing in the same way by substantially the same means, with better results, is not in itself invention." Solar Corporation v. Borg-Warner Corporation, 7 Cir., 1957, 244 F.2d 940; Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., 10 Cir., 1939, 107 F.2d 671, 674. The third element is also found in the Gardner patent which has "a plurality of series of transversely arranged hook-receiving openings" at one end. (See upper portion of fig. 5, Gardner.) Clearly this element is also found in the Niagra holder. "Slots at the [opposite] end to receiving spring operated retainers" are utilized in both Niagra and Gardner. The fifth element, "springs and spring-actuated retainers seated and moveable in a cylindrical shaped space formed by grooves in the inner surface of the housing section and grooves in the spring-guiding plate * * *" were used in Niagra. The sections having grooves in the outer surface extending lengthwise thereof to receive the snells as in the sixth element are taught in Cantrell patent No. 667,676, issued in 1901, DeWitt patent No. 2,102,682 issued in 1937, and in the Wilcox holder.

This brings forward the last element in 344, the sealed air chamber. The purpose of this element was to cause the holder to float if it was accidentally dropped in the water. Plastic bath toys with sealed air chambers were in common use by children for many years prior to 1947. The floating air chamber was likewise used in fishing poles, lures, bobbers, and minnow buckets. The use of air chambers in this type of equipment, although all were not disclosed by the evidence, has been so common that this court is justified in taking judicial notice of it. Black Diamond Coal-Mining Co. v. Excelsior Coal Co., 1895, 156 U.S. 611, 15 S.Ct. 482, 39 L.Ed. 553. The court is of the opinion that 344 is an aggregation of old

282

elements clearly shown in the prior art and perform no new function separately or together in the Hamel holder, and the patent is therefore invalid. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

Moreover, in view of teachings shown by the prior art, Hamel's holder lacks invention because he accomplished nothing more than would have been obvious to a mechanic having ordinary skill in the art. 35 U.S.C.A. § 103; Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Noble Co. v. C. S. Johnson Company, infra.

■ The plaintiff contends that the defendant failed to overcome the presumption of validity. The patents which have been used as prior art by this court were not cited as references by the Patent Office and this greatly weakens the presumption of validity if it does not destroy it. Cornell v. Adams Engineering Company, 5 Cir., 1958, 258 F.2d 874; Noble Co. v. C. S. Johnson Company, D.C.E.D.Ill.1956, 139 F.Supp. 868, affirmed 7 Cir., 1957, 241 F.2d 469. In the instant case the defendant has overcome the presumption of validity.

■ Plaintiff's design patent 958 claims the "ornamental design for a fishhook and snell holder as shown." The drawings, figs. 1, 2, 3, and 4 are identical, except for shadings, as figs. 1, 2, 3, and 4 of the mechanical patent. The prior art cited against the mechanical patent is also prior art in considering the validity of the design patent. In re Hoffmann, 1934, 68 F.2d 978, 21 CCPA 924. The design patent is required to be product of invention the same as a mechanical patent. 35 U.S.C.A. § 171; Burgess Vibrocrafters, Inc., v. Atkins Industries, Inc., 7 Cir., 1953, 204 F.2d 311; Spaulding v. Guardian Light Company, 7 Cir., 1959, 267 F.2d 111. Various patents may be combined to show the lack of originality in the artistic appeal of a design patent. Blisscraft of Hollywood v. Rona Plastic Corp., D.C.S.D.N.Y.1954, 123 F. Supp. 552, affirmed 2 Cir., 1955, 219 F. 2d 238; Application of Glavas, 1956, 230 F.2d 447, 43 CCPA 797.

■ Hamel's design patent when compared with the prior art does not rise to the level of invention. An examination of the Niagra and Wilcox models, the drawing in the Buicke patent and Gardner fig. 5 are all rectangular in shape the same as fig. 1 in 958. The parallel grooves which are shaded in the design patent in fig. 1 appear in Cantrell fig. 1, DeWitt et al. fig. 1, and obviously Wilcox. The spring-actuated retainers at one end, the hook-receiving openings at the opposite end appear in Niagra. Figure 2 of 958 shows a side view with the hook to catch the loop end of the snell. Niagra from a side view gives a similar appearance. There is nothing particularly ornamental about the line down the center of this longitudinal side view. It is obvious that when two Gardner housings in fig. 6 are placed back to back, and 17(b) of fig. 6 is extended to meet each end of the flange there would be a similar appearance. Figure 3 of 958 is an end elevation from left to right of fig. 1, and is similar in appearance to Niagra held in the same manner. One-half of fig. 3 of 958 resembles fig. 7 in Gardner. Figure 4 looking at an end view on the right of fig. 1 appears similar to Niagra. These references were not cited in the patent. The presumption of validity is weakened by the absence of these references. Scripto, Inc. v. Ferber Corporation, D.C. S.D.N.J.1958, 163 F.Supp. 113, affirmed 3 Cir., 267 F.2d 308. Every drawing in Hamel's patent 958 when considered with the teachings of the prior art, would have been obvious to the ordinary designer skilled in the art, and therefore design patent 958 lacks patentability. Burgess Vibrocrafters, Inc. v. Atkins Industries, Inc., supra.

Although Hamel claims the design for a fishhook holder in 958 the appearance is dictated by the mechanical and functional requirements of his mechanical patent 344, and is therefore invalid. Hopkins v. Waco Products, Inc., 7 Cir., 1953, 205 F.2d 221. The design is rectangular to accommodate the hooks and snells. The length is required by the length of the snell. The slots which appear at one end accommodate the hooks. The loops

on the snell catch in the hooks as they appear on the other end. Thus, the snells with the hooks attached may be carried in a stretched position. The fisherman will not catch his hand or garments in the hooks, which was one of the purposes of the holder in the mechanical patent as shown in 344. Col. 1, line 51 et seq. The appearance is not ornamental but is entirely governed by the use for which it was intended.

Since there is no doubt as to the invalidity of the mechanical and design patents commercial success need not be considered. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Burgess Vibrocrafters, Inc. v. Atkins Industries, Inc., supra.

The court does not reach the question of infringement because neither of plaintiff's patents is valid. Master Metal Strip Service v. Protex Weatherstrip Mfg. Co., 7 Cir., 1948, 169 F.2d 700, certiorari denied 335 U.S. 898, 69 S.Ct. 299, 93 L.Ed. 433.

For the reasons stated the plaintiff's suit must be dismissed. Findings of fact, conclusions of law and final order in accordance with the views expressed herein will be entered.