**UARCO INCORPORATED, a corporation, Plaintiff,**

v.

**MOORE BUSINESS FORMS, INC., a corporation, Defendant.**

**No. 67 C 1522.**

United States District Court
N. D. Illinois, E. D.

Nov. 19, 1969.

---

James C. Wood, Chicago, Ill., for plaintiff. John Rex Allen, and Wm. R. McNair, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Theodore R. Scott, McDougall, Hersh, Scott & Ladd, Chicago, Ill., and Watson, Cole, Grindle & Watson, William J. Daniel, and Walter D. Ames, Washington, D. C., for defendant.

## DECISION ON THE MERITS

ROBSON, District Judge.

Uarco Incorporated brings this action against Moore Business Forms, Inc. for alleged infringement of its patent. The plaintiff seeks injunctive relief and an accounting for damages. The defendant counterclaims for a judgment declaring the plaintiff's patent invalid and, further, that the defendant has not and is not infringing upon the patent in suit. The jurisdiction of this court is undisputed. After a trial on the merits, this court is of the opinion that judgment should be rendered for the defendant.

### The Patent In Suit

United States Patent 3,104,799 was issued on September 24, 1963, as a result of an application filed May 29, 1961, in the name of plaintiff's then Manager of Product Engineering, Donald J. Steidinger.[1] The Steidinger patent discloses continuous stationery generally referred to as a manifold assembly. The continuous manifold assemblies are manufactured from superimposed long strips of paper called plies. A top ply may be a business record. Underlying plies form envelopes with inserts sealed inside. The inserts may be business records or return envelopes or both. The inserts may be imprinted while within the sealed envelopes as the manifold assembly passes through a suitable office imprinting machine, such as a typewriter, tabulator or computer printer, by means of carbon paper or spot carbon. The evidence discloses that the inserts might take the

---

1. The patent in suit is hereinafter referred to as the Steidinger patent.

form of premium notices, advertising, bills, or invoices.

The Steidinger patent further discloses that the inserts are attached to the outer sealed envelope along the left-hand margin, but such inserts are unattached to the other three margins of the outer envelope. A tear strip is formed at the left-hand margin of the outer envelope. To open the envelope, the tear strip is simply detached along the left-hand edge of the envelope, and simultaneously the insert is entirely free of the envelope.

The claims of the Steidinger patent asserted against the defendant's accused business forms at trial were 1 to 6, 10 to 13, and 18.[2] Claims 1 to 6 and 10 to 12 are drawn to "an assembly having a series of stuffed sealed envelopes." Claim 13 recites "a stuffed sealed envelope assembly" and claim 18 "an assembly including a stuffed sealed envelope." By testimony of witnesses for both parties, these introductory clauses have been interpreted to mean that claims 1 to 6 and 10 to 12 encompass as the plaintiff's alleged invention a series of envelope assemblies which are attached to each other along perforated lines. Such assemblies are those illustrated in Figures 2 and 7 of the Steidinger patent. Claim 13 recites an envelope assembly which is a *single unit* of the series set forth in claims 1 to 6 and 10 to 12. Such a unit or assembly is illustrated in Figures 1 and 8 of the Steidinger patent. Claim 18 is a hybrid of all the other claims.

### The File History Of The Steidinger Patent

During the prosecution of the Steidinger application, the Patent Office rejected all eighteen claims on August 3, 1961. The Patent Office cited as references Sherman United States Patent 2,257,766 [3] and Wanser United States Patent 2,148,886.[4] Following this rejection, the patentee filed a letter dated January 16, 1962, and amended on January 19, 1962. Neither the letter nor the amendment made changes in the claims of the Steidinger application. The amendment argued the patentability of the claims and, *inter alia,* pointed out that the difference between the Wanser patent disclosure and the Steidinger claims was the "structural requirement that the insert material have free marginal edges within the sealed envelope and an attaching portion." The Steidinger amendment further stated that "[a]pplicant's claims are all directed to insert material secured within a sealed envelope by an attaching portion with the remainder of the insert material having marginal edges free of the sealed envelope." By such argument, the Steidinger application pointed out to the Patent Examiner the distinction between the disclosure of Wanser and the claims of the Steidinger patent. Specifically, *all margins* of insert matter are attached to the outer envelope *according to the disclosure* of the Wanser patent, while Steidinger discloses that *only one margin* is so attached. This argument apparently convinced the Patent Examiner that the alleged invention disclosed by the Steidinger application was not invalidated by the Wanser patent. The Patent Examiner made no additional prior art search after this amendment, but allowed the Steidinger application by Notice of Allowance mailed January 28, 1963.

### The Invalidity Of The Steidinger Patent

The basic challenge made by the defendant to the validity of the Steidinger patent is that its claims were either directly anticipated by the prior art, or would have been obvious to one having ordinary skill in the art at the time the alleged invention was made. This court

2. Claim 13 was abandoned by the plaintiff after trial. The impact of this abandonment will be discussed *infra.*

3. Hereinafter referred to as the Sherman patent.

4. Hereinafter referred to as the Wanser patent.

agrees. The defendant predicates invalidity on three prior patents: United States Patent 697,971 to Bonnaffon, issued April 22, 1902;[5] the Wanser patent, issued February 28, 1939; and the Sherman patent, issued October 7, 1941. These patents expired seventeen years after their respective dates of issuance, and all were in the public domain when Steidinger developed his alleged invention.

The Bonnaffon, Wanser and Sherman patents are prior art against the Steidinger patent. However, the Bonnaffon patent was not cited by the Patent Office in the course of prosecution of the Steidinger application. Bonnaffon was classified in the United States Patent Office under class 229, subclass 72. Class 229 originated in 1899. The present title of class 229 is "Paper Receptacles." The present titles of subclasses 69, 70 and 72 are "Series Envelopes," "Coupon Envelopes" and "Compartment Envelopes," respectively. The search notes in the File History of the Steidinger patent indicate that on July 31, 1961, the Examiner searched class 229, subclasses 69, 70 and 72. The statutory presumption of validity normally attaching to the issuance of a patent is of no aid to the plaintiff with respect to prior art not cited by the Patent Office. Appleton Electric Co. v. Efengee Electrical Supply Company, 412 F.2d 579, 581 n. 4 (7th Cir. 1969); Novo Industrial Corp. v. Standard Screw Co., 374 F.2d 824, 827 (7th Cir. 1967); Simmons Co. v. Hill-Rom Co., 352 F.2d 886, 888 (7th Cir. 1965). *Even one prior art reference not considered by the Patent Office can suffice to overthrow the presumption of validity of an issued patent.* T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966); Hobbs v. Wisconsin Power & Light Co., 250 F.2d 100, 105 (7th Cir. 1957), cert. den. 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958).

Because this court concludes that the Steidinger patent is invalid, the question of infringement need not be considered. Sinclair & Carroll Co., Inc. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945); Master Metal Strip Service, Inc. v. Protex Weatherstrip Mfg. Co., 169 F.2d 700 (7th Cir. 1948); Senco Products, Inc. v. Fastener Corp., 168 F.Supp. 850 (N.D.Ill.1958).

### The Prior Art

The specific embodiments illustrated in the Bonnaffon patent are of an envelope blank folded upon itself to form an envelope having insert material attached at one marginal end only and unattached along its other margins. The insert materials shown in the figures contained in the Bonnaffon patent consist of either an inner envelope or a single insert sheet. Like the Steidinger patent, some of the Bonnaffon figures disclose that the outer envelope has a tear strip along the left-hand margin, the same margin to which the insert matter is attached. The only substantive differences between the Bonnaffon and Steidinger patents are that the Bonnaffon envelope structure is not constructed from long plies of paper in a series separated by perforations, Bonnaffon does not contain feed holes for processing through computers or tabulators, and Bonnaffon does not disclose means for imprinting the insert material *through* the outer envelope, as does the Steidinger patent by use of carbon paper or spot carbon printing.

The defendant's patent claim expert, Robert E. Burns, a patent attorney with many years of practice, applied claim 13 of the Steidinger patent to Bonnaffon. Taking the parts of claim 13 separately, he read the claim in its entirety on the disclosure of Bonnaffon. After trial, the plaintiff admitted in its proposed findings of fact and conclusions of law that claim 13 is invalid over the prior art. The plaintiff also admits that the only difference between claim 13 and the other claims of the Steidinger patent is that claim 13 is directed to a *single envelope* assembly, as opposed to a continuous series of envelopes, and claim 13 does not define the structural feature of

---

5. Hereinafter referred to as the Bonnaffon patent.

the superimposed continuous plies employed to form the manifold assembly. However, these differences were disclosed by other patents which entered the public domain after issuance of the Bonnaffon patent, but well before Steidinger developed his alleged invention.

The Wanser patent, issued in 1939, was assigned to the plaintiff on July 21, 1953. Entitled "Envelope in Continuous Strip Form," Wanser discloses a continuous series of stuffed, sealed envelope assemblies joined along perforations. The individual envelope assemblies of the series have substantially the same structure as their counterparts in the Steidinger patent except that in Wanser the insert material is attached to the outer envelope along all four of its margins. As discussed *supra*, the Steidinger amendment distinguished Wanser solely on the basis that the insert material of Steidinger was attached along only one of its margins, while Wanser is attached along all four of its margins. Wanser utilizes both carbon sheets and spot carbon printing in the manner of Steidinger so that the insert material within the envelope may be imprinted while the envelope is in a sealed condition.

The final patent relied upon by the defendant is the Sherman patent, entitled "Series Connected Envelope and Check." The Sherman patent, cited by the Examiner during the prosecution of the Steidinger application, shows feed holes in a continuous series of envelope assemblies. These feed holes were shown by the evidence to be commonplace in the art, and serve to enable processing of the continuous forms through computers and tabulators. Sherman discloses imprinting the face of an envelope simultaneously with an insert sheet by means of transfer material such as carbon spots.

■ This court finds that the subject matter of the Steidinger patent was obvious to one familiar with the Bonnaffon, Wanser and Sherman patents at the time Steidinger developed his alleged invention, and the patent in suit is therefore invalid pursuant to 35 U.S.C. § 103.[6] The criteria to be applied in adjudging obviousness are threefold: determination of the scope and content of the prior art; ascertainment of the differences between the prior art and the claims at issue, and resolution of the level of ordinary skill in the pertinent art. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Appleton Electric Company v. Efengee Electrical Supply Company, *supra*. Applying these criteria, this court finds that all of the elements embodied in the Steidinger patent had been previously disclosed in the Bonnaffon, Wanser and Sherman patents. This court further finds that it would have been obvious to one having ordinary skill in the relevant art, with both the Wanser and Bonnaffon patents before him, to replace the four-margined tear strip of Wanser with the single-margined tear strip of Bonnaffon.[7]

### The Commercial Success Of The Steidinger Product

■ The plaintiff presented evidence of the considerable commercial success enjoyed by its product, DATA-MAILER, manufactured according to the teachings of the Steidinger patent. Commercial success may be secondary evidence that an alleged invention is novel and unobvious *where that success is shown to be a*

---

6. 35 U.S.C. § 103 provides in part that "[a] patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

7. The defendant offered the testimony of one of its employees, Victor Firth, as the mythical "man of ordinary skill" over plaintiff's objection. Although such testimony is relevant and has probative value (see Felburn v. New York Central Railroad Co., 350 F.2d 416 (6th Cir. 1965); Minnesota Mining & Mfg. Co. v. Norton Co., 280 F.Supp. 674 (N.D.Ohio 1968), this court attributes little weight to such testimony in view of the witness's interest and bias.

*result of the allegedly novel elements disclosed in the patent claims.* Schreyer v. Chicago Motocoil Corp., 118 F.2d 852, 857 (7th Cir. 1941); Carboline Company v. Mobile Oil Corporation, 301 F.Supp. 141, 145 (N.D.Ill.1969). As shown by the file history, the novel aspect of·the Steidinger patent claimed over the prior art was its easy open features, i. e., inserts attached to the detachable margin only and free along the remaining margins. The testimony, however, indicated that commercial success was due to the ease with which the plaintiff's product was utilized with data processing equipment, resulting in substantial reductions of man-hours in preparing business mailings. It is uncontroverted that the plaintiff was the first manufacturer of business forms to produce a commercially marketable product incorporating features which were in the public domain for some time. However, the plaintiff did not present any evidence indicating that the commercial success of its product was due to the alleged novel aspect of the Steidinger patent, i. e., the easy open feature. The evidence indicated that continuous manifold assemblies manufactured from superimposed strips of paper suitable for use in computers and tabulators to imprint material sealed inside were commercially available before the alleged Steidinger invention, and were in fact manufactured by the plaintiff in the form of a product called "Convelope." For these reasons, the commercial success of the DATA-MAILER product is of little aid to the plaintiff on the issue of obviousness.

### Attorney Fees

■ The defendant asks this court to award it reasonable attorney fees pursuant to 35 U.S.C. § 285 incurred by the defendant from April 17, 1968, to the date of entry of the judgment herein. April 17, 1968, is the date on which the defendant apprised the plaintiff of the Bonnaffon patent. The defendant thereafter moved for summary judgment on the basis that the designated claims of the Steidinger patent were invalid over the prior art, including the Bonnaffon patent. The plaintiff successfully resisted the motion by filing affidavits. The plaintiff had the ·Bonnaffon patent before it and minimally should have admitted, as it did after trial, that claim 13 is invalid because it reads directly on Bonnaffon. The other designated claims differ from claim 13 fundamentally in the respect that they claim a series of assemblies rather than an individual assembly. Such series were known by the plaintiff to have been disclosed by the prior art: the plaintiff had been an assignee of the Wanser patent and had previously manufactured such series of assemblies. The plaintiff should not have persisted in asserting its clearly invalid claims, thereby causing the defendant the expense of trial. The defendant should therefore be awarded reasonable attorney fees from the date when it is clear that the plaintiff became aware of the Bonnaffon patent. See Clapper v. Original Tractor Cab Company, 270 F.2d 616, 624 (7th Cir. 1959), cert. den. 361 U.S. 967, 80 S.Ct. 588, 4 L.Ed.2d 547 (1960); Wood Products Development Co. v. Oak Flooring Co., 267 F.Supp. 193 (W.D.Mo.1966).

### Orders

It is therefore ordered that claims 1 to 6, 10 to 12, and 18 of the Steidinger patent be, and they are hereby declared invalid.

It is further ordered that the defendant be, and it is hereby awarded reasonable attorney fees incurred between April 17, 1968, and the date of the entry of this judgment order, as well as costs.

It is ordered that the cause be, and it is hereby dismissed.